Filed 4/12/13  In re Quincy A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re QUINCY A., a Person Coming Under the Juvenile Court Law. | D062029 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J230570) |
| v. | |
| QUINCY A., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Browder A. Willis III and Richard R. Monroy, Judges.  Affirmed in part and remanded with directions.

The district attorney filed a petition in the juvenile court accusing Quincy A. (Minor) of two counts of unlawfully entering a residence of another with the intent to commit theft at a time when the residence was occupied by another (Pen. Code, §§ 460 &

667.5, subd. (c);[1] counts 1 & 2). It was further alleged the Minor committed three counts of petty theft (§ 484; counts 3, 5 & 7) and two counts of entering a building with the intent to commit theft (§ 459; counts 4 & 6).

Following a contested hearing, the court found the allegations contained in counts 2, 4, 5, 6 and 7 to be true. The Minor was declared a ward of the juvenile court and placed on probation.

The Minor appeals, contending (1) all counts must be reversed because the videotape evidence was not properly authenticated at trial; (2) the court erred in permitting the introduction of his interview with police in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*); (3) the court failed to make a section 26 finding the Minor understood the wrongfulness of his conduct; and (4) the case must be remanded because the trial court failed to exercise its discretion to declare the offenses to be felonies or misdemeanors. We affirm the true findings of the juvenile court, but agree with the Minor's final point and remand this matter with directions to the juvenile court to conduct further proceedings in accordance with this opinion.

STATEMENT OF FACTS

On August 5, 2011, Marty Fisher awoke to find the Minor in her home without permission. Fisher discovered several items moved and her cigarettes and lighter missing. On October 29, 2011, the Minor entered a 7-Eleven store in the city of El Cajon. He reached over the counter and took items from the store's cigarette area. On

---

[1] Statutory references are to the Penal Code unless otherwise specified.

November 9, 2011, the Minor again entered the 7-Eleven store, reached over the counter area, took an unknown quantity of cigarette packages and ran out of the store. Surveillance video recorded both events at the 7-Eleven store and still photographs were obtained from the videos.

Officers contacted the Minor at his school. After being read his *Miranda* rights, the Minor acknowledged he knew the difference between right and wrong and gave examples of each. The Minor agreed to answer questions he felt comfortable with and then identified himself as the black male in the photographs obtained from the surveillance videos.

## DISCUSSION

### 1. *Authenticity of the Video/Photograph Evidence*

We first consider the Minor's contention that the 7-Eleven store's surveillance videos were not properly authenticated before the trial court admitted them into evidence. In considering such claims, we apply the abuse of discretion standard of review. (*People v. Williams* (1997) 16 Cal.4th 153, 197.

A videotape is equivalent to a " '[w]riting' " for purposes of the Evidence Code. (Evid. Code, § 250; *People v. Rich* (1988) 45 Cal.3d 1036, 1086, fn. 12.) Under Evidence Code section 1401, subdivision (a), "[a]uthentication of a writing is required before it may be received in evidence." Therefore, the surveillance videos were not admissible unless they were properly authenticated.

"[A] video recording is authenticated by testimony or other evidence that it actually depicts what it purports to show." (*McGarry v. Sax* (2008) 158 Cal.App.4th 983,

3

990.) "The general rule is that photographs are admissible when it is shown that they are correct reproductions of what they purport to show. This is usually shown by the testimony of the one who took the picture. However, this is not necessary and it is well settled that the showing may be made by the testimony of anyone who knows that the picture correctly depicts what it purports to represent." (*People v. Doggett* (1948) 83 Cal.App.2d 405, 409; see also *People v. Bowley* (1963) 59 Cal.2d 855, 860-861 [citing *Doggett* with approval].) "[I]t is not required that the photographer himself be produced where other evidence is available to accomplish the same end. The effect and probative value of such other evidence is the important consideration, and not that the way or manner of making the requisite showing should be exactly the same in all cases." (*Doggett*, at p. 410.)

At trial on March 6, 2012, Officer Alvarado of the El Cajon Police Department testified the 7-Eleven store manager gave him two surveillance videos on November 10, 2011. As he watched the videos in court, Officer Alvarado stated they appeared the same as when he viewed them at the 7-Eleven store. He identified the date and time stamp on the first video as November 9, 2011, at 15:04 hours. He identified the date and time stamp on the second video as October 29, 2011, at 16:20 hours. The store manager told Officer Alvarado both videos were recorded on the same surveillance system tied in with the cash register in the 7-Eleven store. Officer Alvarado stated he had been to the store on previous occasions as well as on November 10 to receive the videos and the store appeared the same in the videos as those times he visited it. Officer Alvarado's testimony therefore provided sufficient evidence the videos accurately depicted the defendant's

4

conduct in the 7-Eleven store. Further, the close proximity in time between the officer's viewing and the trial, along with his personal recollection of the layout of the store, tend to show the accuracy of the officer's testimony.

In addition, the Minor's own self-identification in the still photographs taken from the surveillance video supports the video's authenticity. Officer Kolombatovic of the El Cajon Police Department went to the Minor's school, showed him the photographs he obtained from the surveillance video, and asked, "That's you, right?" The Minor responded, "Yes." Officer Kolombatovic noted the Minor appeared to be wearing the same clothing as he was wearing in the video and photographs. The Minor corrected Officer Kolombatovic by stating he was actually wearing a different pair of shorts. Cumulatively, the officers' testimony and the Minor's statements provide sufficient authentication of the video evidence and the trial court did not abuse its discretion in admitting the evidence.

2. *Voluntary, Knowing, and Intelligent Waiver*

The Minor next claims the trial court erred in admitting the evidence of his statements during his discussion with police officers on November 30, 2011, over his objection that he did not knowingly and intelligently waive his *Miranda* rights. After reviewing the record, we conclude the court correctly overruled the Minor's objection.

When we review the denial of a motion to suppress a statement obtained in alleged violation of *Miranda*, " ' "[w]e must accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if they are substantially supported.

5

[Citations.] However, we must independently determine from the undisputed facts, and those properly found by the trial court, whether the challenged statement was illegally obtained. [Citation.]" ' [Citations.]" (*People v. Crittenden* (1994) 9 Cal.4th 83, 128.)

"To establish a valid waiver of an accused person's right to counsel and to remain silent, the People must show, by a preponderance of the evidence, that the accused voluntarily, knowingly and intelligently waived such rights. [Citations.]" (*In re Bonnie H.* (1997) 56 Cal.App.4th 563, 577.) Whether a juvenile knowingly and intelligently waived his privilege requires courts to consider the "totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel." (*Fare v. Michael C.* (1979) 442 U.S. 707, 725.) This approach mandates inquiry into all the circumstances surrounding the interrogation, including evaluation of the juvenile's age, experience, education, background and intelligence, and whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights and the consequences of waiving those rights. (*Id.* at pp. 725-726.) While age is important in determining voluntariness, emphasis on that criteria does not mean a different standard of proof applies to juveniles than to adults. (*Id.* at p. 725.)

Here, the Minor was 13 years old at the time he was interviewed by Officers Kolombatovic and Larson while sitting at a lunch table outside his school regarding the events surrounding the thefts at the 7-Eleven store. Before initiating the conversation, Officer Kolombatovic read the Minor his rights under *Miranda* and asked if the Minor understood those rights. In response to the second two warnings, the Minor said he was

6

unfamiliar with the term "attorney" and Officer Kolombatovic clarified "attorney" means lawyer. Officer Kolombatovic then asked the Minor if he wished to waive those rights. The Minor initially responded he wasn't sure, so Officer Larson asked if the Minor would be willing to answer questions with which he was comfortable, while telling him he did not have to answer questions about which he was not comfortable. The Minor replied "Yes" and proceeded to answer some, but not all, of Officer Kolombatovic's questions. Notably, when Officer Kolombatovic asked the Minor why he had taken cigarettes from the 7-Eleven store, the Minor replied "No comment."

The totality of the circumstances on the record establishes the Minor understood his rights under *Miranda* and he knowingly and voluntarily waived those rights. The officer's unchallenged trial testimony established the Minor was in a noncoercive environment while seated outside on the lunch tables at his school being interviewed. During the *Miranda* warnings, Officer Kolombatovic clarified any portions of the advisement the Minor did not understand before asking the Minor if he would answer questions. Further, the Minor agreed to answer questions he was comfortable with after receiving his *Miranda* warning. The totality of the circumstances therefore establishes by a preponderance of the evidence the Minor knowingly, intelligently and voluntarily waived his *Miranda* rights and the court's ruling on the objection was proper.

### 3. *Knowledge of the Wrongfulness of the Acts*

Next, the Minor claims the court failed to make a section 26 finding that he understood the wrongfulness of his conduct. We disagree.

7

When a minor contends there is insufficient evidence to support the determination that he understood the wrongfulness of his conduct, "[w]e review the whole record most favorably to the judgment to determine whether there is substantial evidence--that is, evidence that is reasonable, credible, and of solid value--from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.)

A juvenile under the age of 14 is presumed incapable of committing a crime, but the presumption can be rebutted upon clear and convincing proof the minor appreciated the wrongfulness of the criminal act alleged. (§ 26; *In re Manuel L.* (1994) 7 Cal.4th 229, 231-232.) A child's knowledge of the wrongfulness of his conduct is rarely susceptible of direct proof and generally must be established by circumstantial evidence and the reasonable inferences from it. (*People v. Buckley* (1986) 183 Cal.App.3d 489, 494-495.) A court should consider "the minor's age, experience, and understanding, as well as the circumstances of the offense, including its method of commission and concealment. [Citations.]" (*In re James B.* (2003) 109 Cal.App.4th 862, 872, 873.) As a child approaches the age of 14, the more likely it is for the child to appreciate the wrongfulness of his acts. (*Id.* at pp. 872-873.) The conduct and statements of a minor during the commission of the crime or after its commission may also evidence an awareness of the wrongfulness of the conduct. (*In re Cindy E.* (1978) 83 Cal.App.3d 393, 400.)

Here, there was clear and convincing evidence on the record from which the court could have concluded the Minor understood the wrongfulness of his conduct. The Minor committed the thefts in late October and November when he was 13 and his 14th birthday

8

in February was approaching. At trial, Officer Kolombatovic testified he asked the Minor several questions to determine whether the Minor knew the difference between right and wrong and whether the Minor knew stealing cigarettes was wrong. In response, the Minor provided examples of right and wrong conduct and explicitly stated he knew stealing cigarettes from the 7-Eleven store was wrong. The court was entitled to rely on the testimony at trial in making its finding under section 26 and that testimony provided clear and convincing evidence the Minor knew the wrongfulness of his actions.

Further, the parties stipulated section 26 was established at trial. At the disposition hearing, the discussion leading to the stipulation was as follows:

> "The Court: The parties stipulating -- let's stipulate to -- are the parties willing to stipulate to the fact that [Penal Code section] 26 was in fact established either at a prior court proceeding or by agreement?
>
> "[The Defendant]: We will submit.
>
> "The Court: The parties stipulate that the issue of [Penal Code section] 26 was established at a prior court proceeding."

Therefore, in addition to the clear and convincing evidence provided at trial, the parties stipulated to the satisfaction of section 26 requirements and no further finding was necessary.

### 4. *Misdemeanor/Felony Declaration*

Finally, the Minor contends the juvenile court's failure to expressly state on the record whether the true findings were felonies or misdemeanors mandates a remand for that purpose. We agree.

9

Welfare and Institutions Code section 702 provides when a juvenile defendant is found to have committed a wobbler—i.e., an offense that would in the case of an adult be punishable alternatively as a felony or a misdemeanor—"the court shall declare the offense to be a misdemeanor or felony."  The purpose of Welfare and Institutions Code section 702 is to ensure the juvenile court is aware of its discretion to treat the offense as a misdemeanor and exercises its discretion.  (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1207.)  The commercial burglary in counts 4 and 6 are "wobbler" offenses.  (§§ 459 & 460.)

The Supreme Court has held Welfare and Institutions Code section 702 requires an express, formal finding by the juvenile court as to felony or misdemeanor nature of a wobbler.  (*In re Manzy W.*, *supra*, 14 Cal.4th at p. 1204.)  Neither a court's recitation of the felony charge made in the petition nor a court's commitment of the juvenile offender for the maximum, felony-length term, nor a minute order reciting that an offense is or could be a "felony," constitutes full compliance with the statutory mandate.  (*In re Ricky H.* (1981) 30 Cal.3d 176, 191; see also *In re Manzy W.*, at pp. 1207-1209; *In re Dennis C.* (1980) 104 Cal.App.3d 16, 23; *In re Jeffery M.* (1980) 110 Cal.App.3d 983, 985.)

Here, the court's failure to fully comply with Welfare and Institutions Code section 702 was error requiring remand to the juvenile court for the limited purpose of formally designating each offense as a misdemeanor or a felony and possible recalculation of the maximum period of confinement.  (See *In re Manzy W.*, *supra*, 14 Cal.4th at p. 1211.)

10

DISPOSITION

The matter is remanded to the juvenile court for compliance with Welfare and Institutions Code section 702 and possible recalculation of the Minor's maximum period of confinement.  In all other respects, the judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.

11